

PATRICK A. MCINERNEY
DIRECT DIAL: (816) 292-8358
pmcinerney@spencerfane.com

File No. 5027855-0001

December 27, 2017

**VIA ELECTRONIC FILING**

Hon. Theodore D. Chuang
United States District Judge
United States District Court for the District of Maryland
6500 Cherrywood Lane, Suite 245A
Greenbelt, Maryland 20770

Re:   Jacinta Elder v. Ryan Sullivan, et al., No. 17-cv-1807-TDC
       Notice of Intent to File a Motion to Compel Arbitration or, in the Alternative to Dismiss

Dear Judge Chuang:

Pursuant to Section II(A)(2) of the Court's Case Management Order in this action (Doc. No. 2), Defendant Ryan Sullivan ("Sullivan") respectfully submits this Notice of Intent to File a Motion to Compel Arbitration or, in the Alternative, to Dismiss, concerning the Complaint filed by Plaintiff Jacinta Elder ("Elder").

If permitted, Sullivan would file a motion to compel arbitration or, in the alternative, dismiss on the following grounds: (1) Elder has previously agreed to arbitrate this dispute; (2) Elder fails to allege that the allegedly usurious loans were made by Sullivan or to present non-conclusory allegations sufficient to justify holding him vicariously liable for the actions of others; (3) Elder fails to allege injury to business or property as required to plead a claim under the Racketeer Influenced and Corrupt Organizations Act ("RICO"); (4) as Elder's claims turn fundamentally on the question of whether defendant Wakpamni Lake Community Corporation ("WLCC") was a *bona fide* tribal entity, this action should be decided in an Oglala Sioux tribal court and, as such, should be dismissed pursuant to *forum non conveniens* and the tribal exhaustion doctrine; and (5) Elder's state-law claims are time-barred.

I.   **BASES FOR MOTION**

   A.   **Arbitration**

As an exhibit to her complaint, Elder attached the loan agreement that she contends was unlawful. The loan agreement, on its face, contains an express arbitration clause. *See* Doc. No. 1-1 at 7 ("**WAIVER OF JURY TRIAL AND AGREEMENT TO ARBITRATE.** Unless you promptly opt-out of arbitration in the manner described below, by entering into this arbitration agreement, you are waiving your right to bring any claims that directly or indirectly arise from your Loan Agreement in any court other than a small claims tribunal. Instead, you are agreeing to resolve such claims in binding and mandatory arbitration.") Elder claims that the arbitration clause is "illusory, unreasonable, and unconscionable" due to an unrelated choice-of-law clause that, she argues, is itself allegedly unlawful because it identifies the tribe that sponsored WLCC as the "Sioux Indians" rather than the Oglala Sioux. Under Maryland law, an

WA 10306719.4



Hon. Theodore D. Chuang
December 27, 2017
Page 2

agreement to arbitrate is considered a separate contract; validity is determined within the four corners of the arbitration provision itself. *Cheek v. United Healthcare of Mid-Atlantic, Inc.*, 835 A.2d 656, 664-65 (Md. 2003). Even if the choice-of-law clause were invalid, it would not void the agreement to arbitrate.

### B. Failure to State a Claim – Sullivan's Conduct

The Complaint contains no non-conclusory allegations sufficient to hold Sullivan liable under any of Elder's claims. Sullivan was not the lender on the loan that is the basis for the suit, and the Complaint contains no allegations that he was or that he engaged in any activity directed at Elder. The loan at issue was made by Seaside Payday, LDC ("Seaside"). *See* Doc. No. 1-1 at 5. The only allegation connecting Sullivan to Seaside is the conclusory statement, in paragraph 10 of the Complaint, that "During all times relevant hereto, Sullivan directed, controlled and owned some of the internet lending websites described above, including SeasidePayday.com[.]" Doc. No. 1 at 5. Even if true, this would be insufficient to pierce the corporate veil and hold Sullivan personally liable for Seaside's actions. *See Stanley v. Cent. Garden & Pet Corp.*, 891 F. Supp. 2d 757, 767 (D. Md. 2012) ("[T]o pierce the corporate veil, a plaintiff must show fraud or paramount equity.") The Complaint fails to state a claim upon which relief may be granted.

### C. Failure to State a Claim – RICO

The Complaint also fails to allege that Elder has suffered injury to her business or property, which is a prerequisite for asserting a civil RICO claim under 18 U.S.C. § 1964(c). The Complaint does not allege that Elder has suffered any economic injury from the transaction that forms the basis of her claim. Indeed, she appears to have benefitted economically from the transaction, since she is alleged to have borrowed $500 and paid back $450 – i.e., less than the principal of the loan. *See* Doc. No. 1 at ¶¶ 46, 54. The Complaint therefore fails to state a claim under RICO.

### D. *Forum Non Conveniens* and Tribal Exhaustion

The core of Elder's claim is that the loan was improper because WLCC was, allegedly, not a *bona fide* tribal entity organized under the laws of the Oglala Sioux tribe. Her basis for this claim comes from a 2014 article posted to Al Jazeera America's website. *See* Doc. No. 1 at 2. The article contends that the tribal subdivision meeting at which WLCC was formed did not follow the procedural requirements of Oglala Sioux law. Proving this contention will require not only records of the Oglala Sioux tribe, but also testimony from the witnesses who were present at that meeting, who Sullivan understands reside in or around the Wakpamni district on the Oglala Sioux reservation, none of whom are subject to this Court's subpoena power. This counsels strongly in favor of dismissal on *forum non conveniens* grounds:

> To determine whether a forum non conveniens dismissal is appropriate, federal courts should evaluate both private and public factors. The relevant private interest factors include: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process for attendance of unwilling witnesses; (3) the cost of obtaining willing witnesses; and (4) other practical problems involving efficiency and expense at trial.... The public interest factors consist of the: (1) administrative difficulties flowing from court congestion; (2) local interest in having localized controversies decided "at home;" (3) interest in having a trial of a diversity case in a forum that is familiar with the law that must govern the action; (4) avoidance of unnecessary problems of conflict of laws, or in the



Hon. Theodore D. Chuang
December 27, 2017
Page 3

application of foreign law; and (5) unfairness of burdening citizens of an unrelated forum with jury duty.

*CSS Antenna, Inc. v. Amphenol-Tuchel Elecs., GmbH*, 764 F. Supp. 2d 745, 755 (D. Md. 2011). In this case, none of the fact witnesses are located in Maryland. The only fact witness who ever had any Maryland connection was Elder, but she now resides in Kentucky, and she does not purport to have any personal knowledge about what occurred at the alleged meeting. All other witnesses are located elsewhere, with the vast majority located on the Oglala Sioux reservation. As the "private" factors relate almost wholly to witness issues, the virtual absence of witnesses in the District of Maryland weighs overwhelmingly in favor of dismissal in this case. In addition, determining the legal impact of the facts surrounding the meeting will require interpretation of potentially complex issues of Oglala Sioux tribal law. This further weighs in favor of dismissal for *forum non conveniens*, as the "public interest" factors prefer that such parochial matters be decided at or near the place they occur before a tribunal familiar with the law governing the action. The need to interpret Oglala Sioux law also brings into play the "tribal exhaustion" doctrine, which "holds that when a colorable claim of tribal court jurisdiction has been asserted, a federal court may (and ordinarily should) give the tribal court precedence and afford it a full and fair opportunity to determine the extent of its own jurisdiction." *Ninigret Dev. Corp. v. Narragansett Indian Wetuomuck Hous. Auth.*, 207 F.3d 21, 31 (1st Cir. 2000). If this matter is to be before a court rather than an arbitrator, this suit should be docketed in an Oglala Sioux tribal court.

### E.   Statute of Limitations

Elder took out the loan upon which she now sues on July 1, 2013. *See* Doc. No. 1-1 at 9. She filed the suit just under four years later, on June 30, 2017. Elder's state-law claims are subject to a three year statute. *See* Md. Code Ann. Cts. & Jud. Proc. § 5-101. They are thus time-barred.

### II.   Meet and Confer Requirement

The parties have met and conferred on these issues but have not been able to resolve them.

Respectfully submitted,

*/s/ Patrick A. McInerney by AWD*

Patrick A. McInerney
(*pro hac vice* pending)

PAM/awd

WA 10306719.4