IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

JACINTA ELDER,                          :

      Plaintiff,                       :

v.                                      :          Case No. TDC-17-1807

RAYCEN RAINES, *et al.*,                 :

      Defendants.                      :

**REPORT AND RECOMMENDATION**

This Report and Recommendation addresses Plaintiff Jacinta Elder's "Motion and Memorandum of Law for Default Judgment" ("Motion") (ECF No. 65). Defendants Raycen Raines ("Raines"), Geneva Lone Hill ("Hill"), and the Wakpamni Lake Community Corporation ("WLCC") (collectively, the "Defendants") did not respond to the Motion and the time for doing so has expired. *See* Loc. R. 105.2. On March 11, 2020, in accordance with 28 U.S.C. § 636 and Local Rule 301, Judge Chuang referred this case to me for a report and recommendation on Plaintiff's Motion. (ECF No. 66.) I find that a hearing is unnecessary. *See* Fed. R. Civ. P. 55(b)(2); Loc. R. 105.6. For the reasons set forth below, I respectfully recommend that Plaintiff's Motion be granted.

## I.     FACTUAL AND PROCEDURAL HISTORY

On June 30, 2017, Plaintiff filed a "Class Action Complaint" ("Complaint") (ECF No. 1) against Defendants Ryan Sullivan ("Sullivan"), Ashley Blake Collins ("Collins"), Raines, Hill and the WLCC.[1] Plaintiff's Complaint contains five counts: Count 1, Violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c) (¶¶ 70-83); Count 2, Violations of RICO, 18 U.S.C. § 1962(d) (¶¶ 84-95); Count 3, Violations of Maryland Interest and

---

[1] Plaintiff dismissed her claims against Sullivan and Collins. (ECF Nos. 35 & 60; 65 at 1.)

Usury Law, Md. Code, Com. Law § 12-101, *et seq.* (¶¶ 96-106); Count 4,  Violations of Maryland Consumer Loan Law, Md. Code, Com. Law § 12-301, *et seq.* (¶¶ 107-118); and Count 5, Declaratory Judgment (¶¶ 119-129).[2]

Plaintiff served her Complaint on Defendants (*see* ECF No. 7) but Defendants did not file an answer or responsive pleading within the requisite time period. Plaintiff moved for entry of default on December 17, 2018. (ECF No. 37.) The Clerk's Entry of Default as to Raines, Hill, and the WLCC was entered on December 18, 2018. (ECF Nos. 38.) Plaintiff filed the Motion on March 4, 2020.

## II.    LEGAL ANALYSIS

### A.    Standard for Entry of Default Judgment

In determining whether to award a default judgment, the Court accepts as true the well-pleaded factual allegations in the complaint as to liability. *See Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780-81 (4th Cir. 2001); *United States ex rel. Durrett-Sheppard Steel Co. v. SEF Stainless Steel, Inc.*, No. RDB-11-2410, 2012 WL 2446151, at *1 (D. Md. June 26, 2012). Nonetheless, the Court must consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law. *United States v. Redden*, No. WDQ-09-2688, 2010 WL 2651607, at *2 (D. Md. June 30, 2012) (citing *Ryan*, 253 F.3d at 790). Although the Fourth Circuit has a "strong policy that cases be decided on the merits," *United States v. Shaffer Equip. Co.*, 11 F.3d 450, 453 (4th Cir. 1993), default judgment "is appropriate

---

[2] Although Plaintiff filed her Complaint as a putative class action, she did not move to certify the class and no order certifying the class has been entered by the Court. *See* generally Fed. R. Civ. P. 23 (stating the rules for the conduct of class action cases). Because of the procedural posture of this case, the Court will only address Plaintiff's individual claims and the relief that she seeks on her own behalf. To the extent that Plaintiff seeks relief for the putative class in her Motion, her request will be denied. Awarding relief to a class that has not been certified and to whom no notice has been provided would violate the requirements of Rule 23.

when the adversary process has been halted because of an essentially unresponsive party." *S.E.C. v. Lawbaugh*, 359 F. Supp. 2d 418, 421 (D. Md. 2005). If the Court determines that liability is established, the Court must then determine the appropriate amount of damages. *CGI Finance, Inc., v. Johnson*, No. ELH-12-1985, 2013 WL 1192353, at *1 (D. Md. March 21, 2013). The Court does not accept factual allegations regarding damages as true, but rather must make an independent determination regarding such allegations. *Durrett-Sheppard Steel Co.*, 2012 WL 2446151, at *1.

Rule 55 of the Federal Rules of Civil Procedure provides that "[i]f, after entry of default, the Plaintiff's Complaint does not specify a 'sum certain' amount of damages, the court may enter a default judgment against the defendant pursuant to Fed. R. Civ. P. 55(b)(2)." A plaintiff's assertion of a sum in a complaint does not make the sum "certain" unless the plaintiff claims liquidated damages; otherwise, the complaint must be supported by affidavit or documentary evidence. *United States v. Redden*, No. WDQ-09-2688, 2010 WL 2651607, at *2 (D. Md. June 30, 2012). Rule 55(b)(2) provides that "the court may conduct hearings or make referrals . . . when, to enter or effectuate judgment, it needs to . . . determine the amount of damages." The Court is not required to conduct an evidentiary hearing to determine damages, however; it may rely instead on affidavits or documentary evidence in the record to determine the appropriate sum. *See, e.g.*, *Mongue v. Portofino Ristorante*, 751 F. Supp. 2d 789, 795 (D. Md. 2010).

### B.    Liability

The factual allegations pleaded in Plaintiff's Complaint are common to every count. Plaintiff alleges that Defendants "created and operated an illegal 'rent-a-tribe' payday lending scheme, whereby loans were made to consumers like Plaintiff under the auspices of the WLCC at interest rates far in excess of those permitted by state and federal law." (ECF No. 65 at 2) (citing ECF No. 1 ¶¶ 44-48). Each of the Defendants played a different role in the scheme.

3

The WLCC acts as a holding company that Defendants falsely claimed was "'owned' by the 'Sioux Indians, South Dakota,' *i.e.* a tribe that does not exist." (*Id.* ¶ 2.) It is a privately held corporation that "provides no benefit to the Oglala Sioux Tribe or any other tribe" and "allows internet payday lending websites to use its name and falsely claim that they are 'wholly-owned' and 'controlled by' the WLCC." (*Id.* ¶ 14.) The WLCC does not participate in the daily operations of the payday lending websites, and it does not perform any work in originating, underwriting, financing, servicing, or collecting the loans. (*Id.*)

Sullivan is an "architect[] of the illegal enterprise" and "had direct personal involvement in [its] creation and operation." (*Id.* ¶ 10.) Sullivan controlled several internet lending websites, which he used to "market and collect illegal loans under the disguise of the WLCC." (*Id.*) Like Sullivan, Collins is another "architect[] of the illegal enterprise" with "direct personal involvement in [its] creation and operation. (*Id.* ¶ 11.) Collins "directed, controlled, and owned" several internet lending websites that were "set up to market and collect illegal loans." (*Id.*)

Raines handles "the relationship between the WLCC and the internet lending websites" owned by Sullivan and Collins. (*Id.* ¶ 12.) Raines is the "middleman who brought together Sullivan and Collins with . . . rogue members of the Oglala Sioux Tribe to establish the WLCC."[3] (*Id.*) Raines "receives a percentage of the profits from the illegal loans for his role as the middleman." (*Id.*) Hill is the president of the WLCC. (*Id.* ¶ 13.) She is a "rogue member[] of the Oglala Sioux Tribe who helped form the WLCC." (*Id.*) She receives a percentage of its profits. (*Id.*)

---

[3] Raines is an "enrolled member of the Oglala Sioux Tribe," but "he is not a tribal official and does not represent or act on behalf of the Oglala Sioux Tribe or any other tribe." (*Id.* ¶ 19.) At all relevant times, the WLCC has operated "without approval from and without participation from the Oglala Sioux Tribe." (*Id.* ¶ 12; *see also id.* ¶¶ 19-27.) "The WLCC provides no benefit to the Oglala Sioux Tribe or any other tribe." (*Id.*)

Under Defendants' scheme, "loans are made in the name of WLCC, but Sullivan, Collins, and others . . . provide[] the infrastructure to market, fund, underwrite, and collect the loans." (*Id.* ¶ 30.) The WLCC "holds itself out as the actual lender," and "as an 'arm and instrumentality' of the 'Sioux Indians' even though no such tribe exists in any of the business functions of the WLCC" and no tribe receives any proceeds of the scheme. (*Id.* ¶ 27.) In exchange for a small fee for each loan, the WLCC "has allowed its name to be used by no less than 16 internet payday lending companies" in Defendants' scheme.[4] (*Id.* ¶¶ 28, 34.) In addition to allowing its name to be used, the WLCC "entered into a partnership agreement with each of Defendants' Payday Lending Companies." (*Id.* ¶ 29.) Sullivan, Collins, Raines, and Hill each executed at least one of the partnership agreements with the WLCC. (*Id.*)  "Defendants' business relationship was nothing more than an attempt to mislead consumers and regulators by an illusion that Defendants were protected by tribal immunity." (*Id.* ¶ 43.)

On July 1, 2013, Defendants entered into a loan agreement with Plaintiff, who was then a Maryland resident. (*Id.* ¶ 46.) A copy of the loan agreement is attached to Plaintiff's Complaint. (ECF No. 1-1.) The agreement reflects that Plaintiff's address is in Chevy Chase, Maryland, and is signed and dated by Plaintiff on July 1, 2013. (*Id.* at 2.) The lender listed on the agreement is Seaside Payday, LDC ("Seaside Payday") with an address of No. 35 New Road, P.O. Box 2391, Belize City.[5] (*Id.* at 4.) Seaside Payday is one of the internet lending companies "directed, controlled, and owned" by Sullivan as part of the scheme with the WLCC. (ECF No. 1 ¶ 10.) In the section of the agreement labeled "Truth in Lending Disclosures," the agreement states that the

---

[4] The "small fee generated for the use of the WLCC's name is retained by the rogue members who formed WLCC," including Hill and Raines. (*Id.* ¶ 35.)

[5] In another section of the agreement, an address is listed for "Wakpamni Lake Community Corporation, c/o Seaside Payday, P.O. Box 6048, Pine Ridge, SD 57770." (ECF No. 1-1 at 8.)

amount of the loan made to Plaintiff was $500.00 and the annual percentage rate of interest was 735.0728%. (*Id.*) If Plaintiff repaid the loan according the agreement's payment schedule, she would be required to pay $3,375.00 in interest on a $500.00 loan. (*Id.*) Plaintiff agreed to all of the terms of the loan agreement and signed it on July 1, 2013.

The agreement contains two other provisions that are relevant to Plaintiff's Motion. In the section labeled "Governing Law," the agreement states:

> The laws of the Tribe will govern this Agreement. However, any dispute arising out of this Loan Agreement and any renewal thereof will be subject to the ARBITRATION PROVISION, which is governed by the Federal Arbitration Act.

(*Id.* at 6.) The agreement does not define the term "Tribe" or state what it means by "the laws of the Tribe," but it does state that Seaside Payday is "a tribal entity wholly owned by the [WLCC] of the Sioux Indians, South Dakota, a sovereign nation located within the United States of America, and operating within the Tribe's Reservation." (*Id.* at 2.) The agreement's "Arbitration Provision" appears to be contained in the section labeled "Arbitration Agreement." (*Id.* at 7.) Plaintiff signed this section of the agreement on July 1, 2013.

Although Defendants entered into a loan agreement with Plaintiff, "Defendants' Payday Lending Companies are not, and have not been, licensed by the Maryland Commissioner of Financial Regulation to provide short-term consumer loans." (ECF No. 1 ¶ 51.) After making the loan to Plaintiff, Defendants "received no less than $450.00, which was applied either entirely or almost entirely to interest, from [Plaintiff] as a result of the $500.00" loan made to her. (*Id.* ¶ 54.)

### 1.    Maryland State Law Claims

Plaintiff asserts two claims against Defendants that arise under Maryland law: Count 3, Violations of Maryland Interest and Usury Law, Md. Code, Com. Law § 12-101, *et seq.* (¶¶ 96-106); and Count 4,  Violations of Maryland Consumer Loan Law, Md. Code, Com. Law § 12-301,

*et seq.* (¶¶ 107-118). Taking as true the well-pleaded allegations of the Complaint, Defendants' liability is readily established for Plaintiff's state law claims.

Under Maryland's interest and usury law, "a lender may charge an effective rate of simple interest not in excess of 24 percent per year on the unpaid principal balance of the loan" unless certain exceptions apply. Md. Code, Com. Law § 12-103(c)(1)-(2). Those exceptions do not apply under the circumstances of this case. Accordingly, the maximum interest that Defendants were permitted to charge to Plaintiff for her $500.00 loan was 24%. Instead of complying with Maryland law, Defendants charged Plaintiff interest at an annual rate of 735.0728%. Defendants' conduct violated Maryland's interest and usury law.

Maryland's consumer loan law prohibits a lender from making consumer loans that include interest in excess of certain rates:

> For any loan with an original principal balance of $2,000 or less, the maximum interest rate is:
>
> > (i) 2.75 percent interest per month on that part of the unpaid principal balance not more than $500;
> > (ii) 2 percent interest per month on that part of the unpaid principal balance that is more than $500 but not more than $700; and
> > (iii) 1.25 percent interest per month on that part of the unpaid principal balance that is more than $700.

Md. Code, Com. Law § 12-306(a)(2). Because the loan that Defendants made to Plaintiff was not more than $500, the maximum interest rate permitted under Maryland's consumer loan law is 2.75 percent interest per month. The interest that Defendants charged to Plaintiff far exceeded this maximum interest rate. As such, Defendants' conduct violated Maryland's consumer loan law.

Maryland's consumer loan law also states that "[a] person may not engage in the business of making loans under this subtitle unless the person is licensed under or is exempt from the licensing requirements of Title 11, Subtitle 2 of the Financial Institutions Article, the Maryland

Consumer Loan Law -- Licensing Provisions." Md. Code, Com. Law § 12-302. Here, neither Defendants nor their lending companies were "licensed by the Maryland Commissioner of Financial Regulation to provide short-term consumer loans." (ECF No. 1 ¶ 51.) Accordingly, Defendants' conduct violated Maryland's consumer loan law's licensing requirements.

Maryland's interest and usury law provides the following remedies for loans made in violation of the law:

> Any person who violates the usury provisions of this subtitle shall forfeit to the borrower the greater of:
>
>> (i) Three times the amount of interest and charges collected in excess of the interest and charges authorized by this subtitle;
>> or
>> (ii) The sum of $500.

Md. Code, Com. Law § 12-114(b)(1).

Maryland's consumer loan law provides that loans in the amount of $25,000 or less that are made in violation of the law are "void and unenforceable." Md. Code, Com. Law § 12-314(b)(1). "A person may not receive or retain any principal, interest, fees, or other compensation with respect to any loan that is void and unenforceable." *Id.* § 12-314(b)(2)

Plaintiff has demonstrated that Defendants made a loan to her in violation of Maryland's interest and usury law and Maryland's consumer loan law. Defendants' loan charges an interest rate that exceeds Maryland's interest cap for a loan of its type. In addition, Defendants were not licensed to make the loan to Plaintiff, which is required under Maryland law. Accordingly, Plaintiff has established Defendants' liability under Count 3, Violations of Maryland Interest and Usury Law, Md. Code, Com. Law § 12-101, *et seq.* (¶¶ 96-106); and Count 4:, Violations of Maryland Consumer Loan Law, Md. Code, Com. Law § 12-301, *et seq.* (¶¶ 107-118). I recommend that Plaintiff's Motion be granted as to Defendants' liability for these counts.

###### 2.      Federal Law Claims

Plaintiff asserts two claims against Defendants that arise under Federal law: Count 1, Violations of RICO, 18 U.S.C. § 1962(c) (¶¶ 70-83); and Count 2, Violations of RICO, 18 U.S.C. § 1962(d) (¶¶ 84-95). Both of Plaintiff's RICO claims are based on the "collection of unlawful debt."

Under 18 U.S.C. § 1962(c), it is unlawful

for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

RICO defines an "enterprise" as "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4); *see also Sizer v. Oshinnaiye*, No. ELH-19-569, 2020 WL 263493, at *8 (D. Md. Jan. 17, 2020).

An "unlawful debt" under RICO is a debt

(A) incurred or contracted in gambling activity which was in violation of the law of the United States, a State or political subdivision thereof, or which is unenforceable under State or Federal law in whole or in part as to principal or interest because of the laws relating to usury, and (B) which was incurred in connection with the business of gambling in violation of the law of the United States, a State or political subdivision thereof, or the business of lending money or a thing of value at a rate usurious under State or Federal law, where the usurious rate is at least twice the enforceable rate.

18 U.S.C. § 1961(6).

Under 18 U.S.C. § 1962(d), it is "unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section." *See also United States v. Mouzone*, 687 F.3d 207, 218 (4th Cir. 2012) (explaining, in the context of a criminal case, that "[a] conspirator must intend to further an endeavor which, if completed, would satisfy all of the elements of a

substantive criminal offense, but it suffices that he adopt the goal of furthering or facilitating the criminal endeavor. He may do so in any number of ways short of agreeing to undertake all of the acts necessary for the crime's completion.").

"RICO is not limited to criminal cases." *Donaldson v. Primary Residential Mortg., Inc.*, No. ELH-19-1175, 2020 WL 3184089 , at *22(D. Md. June 12, 2020). Under 18 U.S.C. § 1964(c), "Congress granted a private civil right of action to any person injured in his business or property by reason of a violation of' the RICO provisions." *Id.* (internal quotation marks and modifications omitted). To prevail on a civil RICO claim for the collection of unlawful debt, a plaintiff must satisfy the following elements:

> (1) there was a RICO enterprise, (2) its activities affected interstate commerce, (3) the individual defendants were employed by or associated with the enterprise, (4) the defendants used, in the operation of the enterprise, income derived from the collection of unlawful debt, (5) the individual defendants participated in the conduct of the affairs of the enterprise through collection of unlawful debt, (6) the debt was unenforceable in whole or in part because of state or federal laws relating to usury, (7) the debt was incurred in connection with the business of lending money at a usurious rate, and (8) the usurious rate was at least twice the enforceable rate.

*Day v. DB Capital Grp., LLC*, No. DKC-10-1658, 2011 WL 887554, at *13 (D. Md. Mar. 11, 2011) (quoting *Durante Bros. & Sons, Inc. v. Flushing Nat'l Bank*, 755 F.2d 239, 248 (2d Cir. 1985)).[6]

---

[6] "For RICO claims based on the collection of unlawful debt, the prevailing view is that the plaintiff need not show a pattern of such activity—one act of collection is sufficient." *Day*, 2011 WL 887554, at *12 (noting that "[t]he Fourth Circuit has not formally adopted this interpretation, but district courts within the circuit have embraced the view"); *see Proctor v. Metro. Money Store Corp.*, 645 F. Supp. 2d 464, 481 (D. Md. 2009) ("[A]n allegation of 'collection of unlawful debts' requires only a single act of collection as a predicate for RICO liability."); *Eyler v. 3 Vista Court LLC*, No. RWT-07-2383, 2008 WL 4844962, at *2 (D. Md. Aug. 26, 2008) (holding that "a RICO claim based on 'unlawful collection of debt' under subsection 1962(c), as opposed to 'racketeering activity,' does not require proof of a pattern of such activity").

Plaintiff has established Defendants' liability for the RICO claims. First, Defendants were part of an "enterprise" throughout the course of their scheme to collect an unlawful debt from Plaintiff. Each of the Defendants played a different role in the enterprise, but they were all "associated in fact" with the enterprise's purpose, which was to make usurious loans under the protection of a purported tribal immunity. Second, Defendants' enterprise's activities affected interstate commerce. At all relevant times, Defendants resided outside of Maryland and Plaintiff was a Maryland resident at the time of the loan. Plaintiff's loan agreement was made through an internet website by a company based in South Dakota and Belize. Third, the individual Defendants were associated with the enterprise. They partnered with other members of the enterprise, helped form the enterprise, and received kickbacks from the loans that the enterprise made to borrowers, including Plaintiff. Fourth, the kickbacks and proceeds of the loans that Defendants received were used in the operation of the enterprise. Fifth, the Defendants participated in the conduct of the affairs of the enterprise through the collection of unlawful debt. The Defendants' enterprise's purpose was "to mislead consumers and regulators by an illusion that Defendants were protected by tribal immunity," which allowed the enterprise to collect unlawful debt from Plaintiff. (ECF No. 1 ¶ 43.) This was the same part of the enterprise that Defendants participated in. Sixth, as explained above, Defendants' loan to Plaintiff is unenforceable under Maryland's interest and usury law and Maryland's consumer loan law. Seventh, Plaintiff's debt was incurred in connection with Defendants' enterprise of lending money at a usurious rate. Eighth, Defendants' usurious loan to Plaintiff charged an interest rate more than 30 times the rate permitted under Maryland law. (ECF No. 65 at 3.) Defendants are therefore liable under 18 U.S.C. § 1962(c).

As to the conspiracy count, Plaintiff's Complaint demonstrates that Defendants conspired and agreed to participate in the common enterprise with the intention of furthering that enterprise's

ability to make usurious loans and collect unlawful debts under the fictitious veil of tribal immunity. Defendants are therefore liable under 18 U.S.C. § 1962(d) for conspiring to violate § 1962(c).

For these reasons, I find that Plaintiff has demonstrated Defendants' liability for the federal claims (Count 1: Violations of RICO, 18 U.S.C. § 1962(c) (¶¶ 70-83); and Count 2: Violations of RICO, 18 U.S.C. § 1962(d) (¶¶ 84-95)).

### 3.    The Choice of Law and Arbitration Provisions are Void and Unenforceable

Because Plaintiff has established that Defendants have violated Maryland consumer loan law, the loan agreement with Plaintiff is "void and unenforceable." Md. Code, Com. Law § 12-314. The Court finds that the unenforceability of the loan agreement extends to the choice of law and arbitration provisions contained in the agreement. Like the other terms of the loan that Defendants made to Plaintiff, the choice of law and arbitration provisions are void and enforceable. Further, Defendants' reference to the "laws of the Tribe" refers to a law that "does not exist." (ECF No. 1 ¶ 64.); *see also Hayes v. Delbert Servs. Corp.*, 811 F.3d 666, 675 (4th Cir. 2016) ("[A] party may not underhandedly convert a choice of law clause into a choice of no law clause—it may not flatly and categorically renounce the authority of the federal statutes to which it is and must remain subject.") In addition, Defendants' choice of law and arbitration provisions are unenforceable because they was procured by fraud. (*See* ECF No. 1 ¶ 65.)  Finally, Defendants have made no effort to enforce these provisions in this Court. In light of all of the factors that weigh against a finding that the provisions should be enforced, and in the absence of any argument to the contrary, the Court concludes that the provisions are void and unenforceable.

### C.      Damages

Having determined that Plaintiff has established liability, it is now appropriate to determine

the damages and remedies to which Plaintiff is entitled. Plaintiff requests that the Court:

> 1.      Declare Defendants' loans to Maryland consumers with interest rates in excess of Maryland's usury rate, including the loan to Plaintiff at Exhibit 1 to the Complaint, null and void;
>
> 2.      Declare that the choice of law and arbitration provisions in Plaintiff's loan contract at Exhibit 1 to the Complaint are void and unenforceable;
>
> 3.      Enjoin Defendants from (a) seeking to collect on, enforce, sell, or otherwise receive any principal, interest, charges, or other benefits from any consumer loan issued to a Maryland resident with an interest rate in excess of Maryland's usury rate, including the loan to Plaintiff at Exhibit 1 to the Complaint and (b) investing in or providing support, whether monetary or otherwise, to any person or entity offering, issuing, processing, collecting, or servicing loans to Maryland consumers with interest rates in excess of Maryland's usury rate or that otherwise usury rate or that otherwise violates Maryland law or regulation, including the loan to Plaintiff at Exhibit 1 to the Complaint;
>
> 4.      Refund Plaintiff $450; [and]
>
> 5.      Award Plaintiff attorney's fees and costs.

(ECF No. 65 at 5-6.)

With respect to Plaintiff's first request for relief, I recommend that the request be granted

in part and denied in part. Under Md. Code, Com. Law § 12-314, Defendants' loan to Plaintiff is

"void and unenforceable." Plaintiff is entitled to a declaration to this effect. *See* 28 U.S.C. §

2201(a). But, as stated above, this case has not been certified as a class action. The Court should

not award relief to any person who is not a party to this case. As such, the Court should deny

Plaintiff's request for a declaration that Defendants' loans to Maryland consumers with interest

rates in excess of Maryland's usury rate (other than Plaintiff) are null and void.

Plaintiff's second request for relief, regarding the unenforceability of the loan agreement's

choice of law and arbitration provisions, should be granted. Because the choice of law and

abirritation provisions of Plaintiff's loan agreement are "void and unenforceable," Plaintiff is entitled to a declaration to that effect. *See* 28 U.S.C. § 2201(a).

Plaintiff's third request for relief should be granted in part and denied in part. Because the loan that Defendants made to Plaintiff is "void and unenforceable," Plaintiff is entitled to an order enjoining Defendants from "(a) seeking to collect on, enforce, sell, or otherwise receive any principal, interest, charges, or other benefits from" the loan that Defendants made to Plaintiff, and "(b) investing in or providing support, whether monetary or otherwise, to any person or entity offering, issuing, processing, collecting, or servicing" the loan that Defendants made to Plaintiff. Plaintiff's request should be denied to the extent that it seeks this relief on behalf of a class that was never certified as required by Fed. R. Civ. P. 23.

Plaintiff's fourth request for relief should be granted. Plaintiff paid Defendants $450.00 on a loan that is "void and unenforceable." Under Md. Code, Com. Law § 12-314(b)(2), a "person may not receive or retain any principal, interest, fees, or other compensation with respect to any loan that is void and unenforceable." Accordingly, the principal, interest, fees, and other compensation that Plaintiff paid to Defendants in the amount of $450.00 must be returned to Plaintiff.

Plaintiff's fifth request for relief should be granted. An award of attorney's fees is available under 18 U.S.C. § 1964(c) ("Any person injured . . . by reason of a violation of section 1962 of this chapter may sue . . . and shall recover . . . the cost of the suit, including a reasonable attorney's fee. . . ."). I recommend that Plaintiff be awarded reasonable attorney's fees pursuant to 18 U.S.C. § 1964(c). I further recommend that Plaintiff be directed to comply with Local Rule 109.2 if she wishes to obtain attorney's fees.

In addition, as a prevailing party, Plaintiff is entitled to "costs—other than attorney's fees." Fed. R. Civ. P. 54(d)(1); *see also* 28 U.S.C. § 1920. I recommend that the Court award costs to Plaintiff. To obtain such costs, Plaintiff should comply with Loc. R. 109.1.[7]

## III.   CONCLUSION

In sum, I recommend that the Court:

1.      Grant Plaintiff's Motion for Default Judgment (ECF No. 65) against Defendants Raycen Raines, Geneva Lone Hill, and the Wakpamni Lake Community Corporation as to Counts 1, 2, 3, 4, and 5;

2.      Declare that Defendants' loan to Plaintiff (filed at ECF No. 1-1) is void and unenforceable;

3.      Enjoin Defendants from seeking to collect on, enforce, sell, or otherwise receive any principal, interest, charges, or other benefits from the loan that Defendants made to Plaintiff;

4.      Enjoin Defendants from investing in or providing support, whether monetary or otherwise, to any person or entity offering, issuing, processing, collecting, or servicing the loan that Defendants made to Plaintiff;

5.      Order Defendants to refund $450.00 to Plaintiff;

6.      Award Plaintiff reasonable attorney's fees pursuant to 18 U.S.C. § 1964(c) and Loc. R. 109.2; and,

7.      Award Plaintiff costs pursuant to 28 U.S.C. § 1920, Fed. R. Civ. P. 54(d)(1), and Loc. R. 109.1.

---

[7]   Additional information about costs is available on the Court's website: https://www.mdd.uscourts.gov/bills-costs.

I also direct the Clerk to mail a copy of this Report and Recommendation to the Defendants. Any objections to this Report and Recommendation must be served and filed within fourteen (14) days, pursuant to Fed. R. Civ. P. 72(b) and Local Rule 301.5(b).


August 24, 2020                                      /s/
Date                                         Timothy J. Sullivan
                                             United States Magistrate Judge

16